UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GAYLE A. MESSAL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO. 1:20-cv-00449-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi,* | ) |
| *Acting Commissioner of Social Security*,[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Gayle A. Messal appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, one of Messal's arguments is persuasive, and thus, the Commissioner's decision will be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Messal applied for DIB and SSI on February 26, 2018, alleging disability as of December 31, 2012.[2] (ECF 17 Administrative Record ("AR") 21, 47, 77, 88). Her claim was denied initially and upon reconsideration. (AR 76-97, 100-22). After a timely request (AR 162-63), a

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] Regardless of a claimant's claimed onset date, SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Messal could be eligible to receive SSI is March 2018, given that she applied for SSI in February 2018.

hearing was held on April 2, 2020, before administrative law judge ("ALJ") Kathleen Winters, at which Messal, who was represented by counsel, and a vocational expert ("VE") testified. (AR 40-74). On April 24, 2020, the ALJ rendered an unfavorable decision to Messal, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (AR 18-34). Messal's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

Messal filed a complaint with this Court on December 8, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Messal alleges that: (1) the ALJ erred in not finding her anxiety to be a severe impairment at step two, and (2) the ALJ's residual functional capacity ("RFC") determination failed to account for limitations caused by her anxiety.[3] (ECF 19 at 6).

At the time of the ALJ's decision, Messal was fifty-four years old (AR 76), had a high school education with some college experience (AR 33, 57), and had relevant work experience as an airport worker (AR 33, 249, 257). In her applications, Messal alleged disability due to fibromyalgia; arthritis in her neck, wrist, thumbs, lower back, and toe joints; high blood pressure; medical frailty; moderate to severe depression; neuropathy; chronic dry eye; and anxiety. (AR 77, 255).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

---

[3] Messal also alleges that the ALJ's ultimate decision is unsupported by substantial evidence. (ECF 19 at 6). But this is in light of the ALJ's alleged failures at step two and when assigning the RFC, and thus is not a separate argument for remand. (*Id.*).

Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citations omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869 (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant seeking DIB or SSI must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). A

3

physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[4]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.  *Clifford*, 227 F.3d at 868.

### B.  The Commissioner's Final Decision

On April 24, 2020, the ALJ issued a decision that ultimately became the Commissioner's final decision.  (AR 21-34).  As a preliminary matter, the ALJ noted that Messal was last insured for DIB on June 30, 2018.  (AR 23).  Thus, as to DIB, she must establish that she was disabled as

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

4

of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB). At step one, the ALJ concluded that while Messal had worked after her alleged onset date of December 31, 2012, such work did not rise to the level of substantial gainful activity. (AR 23). At step two, the ALJ found that Messal had the following severe impairments: osteophyte at C4-C7, degenerative disc disease of the lumbar spine, and depression. (AR 24).

At step three, the ALJ concluded that Messal did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 25). The ALJ then assigned Messal the following RFC:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [she] can stand, walk, or sit for 6 hours out of an eight-hour workday; can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; and can never climb ladders, ropes or scaffolds; and can frequently finger bilaterally. With work that can be learned in 30 days, or less; with simple routine tasks, routine workplace changes; simple work-related decisions; and is able to remain on task in two-hour increments.

(AR 27).

The ALJ found at step four that Messal was unable to perform any of her past relevant work. (AR 33). At step five, the ALJ found that given her age, education, work experience, and RFC, Messal could perform jobs that exist in substantial numbers in the national economy including laundry worker and machine packager. (AR 33-34). As such, Messal's applications for DIB and SSI were denied. (AR 34).

## C. The ALJ's Step-Two Determination

Messal first alleges that the ALJ erred at step two when concluding her anxiety was not a severe impairment. (ECF 19 at 6). In support of her arguments, Messal claims that she "has a

5

long history of treatment for anxiety, dating back to 2013 and continually noted through July of 2018, and assessed intermittently as severe with medication changes, poor sleep and difficulty with concentration . . . ." (*Id*. at 6). While Messal does not specifically cite to any evidence of her anxiety in the argument section of her brief, in the "Facts and Medical Evidence" section she cites to multiple instances in the record where she presented with anxiety and was diagnosed with and treated for generalized anxiety disorder by her primary care provider at the Neighborhood Health Clinic in Fort Wayne, Indiana. (*Id*. at 3-4 (citing AR 356-57, 371, 373-76, 438, 441, 446, 448, 451)). She also cites to her May 16, 2019, consultive examination by Leslie Predina, Ph.D., who diagnosed her with persistent depressive disorder, and stated that she "may struggle to get along with her supervisors and coworkers due to her mental health issues." (*Id.* at 5 (citing AR 469)).

Step two of the five-step sequential process requires the ALJ to determine whether the claimant has a severe impairment. "The Step 2 determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities . . . .'" *Meuser*, 838 F.3d at 910 (quoting SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996)); *see also O'Connor-Spinner*, 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted). Nevertheless, "any error that an ALJ commits at step two

6

is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)).

The ALJ's failure to find Messal's anxiety to be a severe impairment despite her diagnosis for generalized anxiety disorder is not free from criticism. *See O'Connor-Spinner*, 832 F.3d at 697. Any error the ALJ may have committed at step two, though, does not necessitate remand. As already mentioned, the ALJ found that Messal had severe impairments at step two, namely her osteophyte at C4-C7, degenerative disc disease of the lumbar spine, and depression. Because "[s]tep two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (citing *Arnett*, 676 F.3d at 591). "As long as the ALJ proceeds beyond step two, as in this case, no reversible error could result solely from [her] failure to label a single impairment as 'severe.'" *Gordon v. Astrue*, No. 407CV0042DFH-WGH, 2007 WL 4150328, at *7 (S.D. Ind. Nov. 13, 2007). Accordingly, because any error at step two was harmless, the Court will turn to the heart of Messal's argument—that the ALJ failed to account for her anxiety when determining her RFC. (ECF 19 at 6); *see Arnett*, 676 F.3d at 591 ("An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." (citations omitted)).

### D. The RFC Determination

Messal argues that the ALJ erred in crafting the RFC by including "no provisions for the opinion of consultative examiner Dr. Predina, who opined that Plaintiff may have trouble getting along with coworkers and supervisors due to mental health issues." (ECF 19 at 6). Messal further alleges that, "because of error at Step 2, [her] long history of anxiety was not addressed in

7

terms of potential greater effects with concentration during periods of severity, during which she may not have been able to hold concentration for two-hour periods as determined in this RFC." (*Id.*).  Ultimately, Messal's arguments regarding her alleged social limitations are persuasive.

In general, the RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal." (citation omitted)); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the

8

claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citing omitted); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

In her RFC analysis, the ALJ specifically cited to and discussed much of the same evidence in the record flagged by Messal in her brief—Messal's presentation during hospital visits, depression and anxiety diagnosis, and use of psychotropic medicines. (AR 30-31). In doing so, the ALJ noted "[w]hile symptomatic at times, treatment records from [Messal's] medical providers throughout the period under consideration routinely show [her] as alert, oriented, and cooperative with normal mood, and affect, intact memory, grossly normal cognitive exam, and good eye contact," and she denied "experiencing memory loss, emotional disturbance, depression, and anxiety/panic attacks." (AR 31 (citing AR 322, 323, 329, 332, 357, 360, 371, 373, 433, 436, 446, 451, 453, 456, 480, 481, 539, 540, 545)).

Further, the ALJ discussed Dr. Predina's consultive examination and specifically considered Dr. Predina's assessment that Messal "may struggle to get along with her supervisors and coworkers due to her mental health issues." (AR 32 (citing AR 466-69)). She similarly noted that the state agency psychological consultant at the reconsideration level, Ann Lovko, Ph.D., apparently in reliance on Dr. Predina's assessment, found Messal moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and opined that Messal could "respond appropriately to brief supervision and interactions with coworkers and work situations." (AR 32 (citing AR 120)). But the ALJ found ultimately that Dr. Predina's assessment—and by extension Dr. Lovko's opinion—was just "partially persuasive," observing that Messal "did not testify to social interaction problems and

9

the treatment records do not reflect issues in this area." (AR 32). While the ALJ does not clarify what treatment records she is referring to, she did consider the medical source statement provided by physical consultive examiner Abdal Shakoor Jan, M.D., who found Messal had "[n]ormal concentration and social interaction." (AR 32 (citing 462)). At step 2 the ALJ further considered adult activity function reports completed by both Messal and her friend, which denied any problem getting along with others or authority figures. (AR 26 (citing AR 270, 279)). The ALJ also noted that Messal "appears to be less than limited as she was able to marry during the pendency of this claim . . . ." (AR 32).

  The ALJ's reasoning is problematic. As mentioned, Dr. Predina acted as a psychological consultive examiner. "It is unusual . . . for an ALJ to reject an examining [agency] doctor's opinion because doctors hired by the agency are unlikely to be biased toward claimants the way treating physicians may be, and they are unlikely to exaggerate a claimant's disabilities." *Lear v. Comm'r of Soc. Sec.*, No. 2:14-cv-307, 2016 WL 1165682, at *3 (N.D. Ind. Mar. 24, 2016). Indeed, "rejecting or discounting the opinion of the agency's own examining physician that the claimant [has social limitations], as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "Although an ALJ is not required to accept the views of an agency examining physician if there is a contrary opinion from a later reviewer or other compelling evidence, the ALJ still must have a good explanation for rejecting or discounting the examining physician's opinion." *Czarnecki v. Colvin*, 595 F. App'x 635, 642 (7th Cir. 2015). While the ALJ is free to, and indeed required to, consider the consistency and supportability of a medical opinion, *see* 20 CFR §§ 404.1520c(a), § 416.920c, she must "adequately articulate" her reasons for discounting the same, *see Clifford*, 227 F.3d at 871.

Here, the ALJ has not provided a "good explanation" for discounting Dr. Predina's opinion. While the ALJ relies at least in part on Messal's and her friend's adult function reports (AR 270, 279), she seemingly misses that Dr. Predina opined that Messal may have difficulty interacting with coworkers and supervisors even though she "reported she generally gets along well with others" (AR 467). Further, Dr. Lovko also considered both adult function reports and Dr. Predina's assessment (AR 111-13), and still concluded that Messal would be moderately limited in her ability to get along with coworkers or peers without distracting and that she "may struggle to get along w/ supervisors and coworkers" (AR 120). Accordingly, Dr. Lovko determined that Messal was only "able to respond appropriately to brief supervision and interactions with coworkers." (*Id.*). It is not abundantly clear, though, why the ALJ discounted these opinions.

It is possible that the ALJ relied on Dr. Jan's report that Messal had normal concentration and social interaction. (AR 462). Indeed, "[w]hen consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019) (citation and internal quotation marks omitted). But here it is not even clear that the ALJ did credit Dr. Jan's assessment over Dr. Predina's, let alone whether substantial evidence supports the decision. The ALJ only cites Dr. Jan's opinion vis-à-vis Messal's ability to interact with others in passing, and then proceeds to discount "this portion of the assessment" because it "does not provide specific functional limitations regarding the use of hands." (AR 32). Presumably then, the ALJ only relied on Dr. Jan's assessment in determining Messal's physical impairments—which makes sense given that Dr. Jan is an internist who acted as a physical consultive examiner. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("The medical records were of purely physical ailments for which

11

Wilder had sought help, and there is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression.").

The ALJ's other reasons for discounting Messal's alleged need for social limitations are similarly problematic. The ALJ, for example, points to Messal's social interactions with three friends and her marriage. But again, Dr. Predina and Dr. Lovko were aware of these interactions and still found social limitations necessary. (*See* AR 111-13, 466-47). Still more, an inner circle consisting solely of three friends and a spouse is not inconsistent with social limitations. *See Toth v. Beryhill*, No. 2:17-cv-66-JVB-PRC, 2018 WL 3830056, at *4 (N.D. Ind. Aug. 10, 2018) ("[A]n inner circle consisting solely of a few family members actually suggests social limitations." (citing *Meuser*, 838 F.3d at 913)). Also, while the ALJ cites to Messal's treatment notes from her primary care provider in support of the contention that the record does not support greater social limitations (AR 31), just three paragraphs prior the ALJ noted that "[i]n the clinical setting, she has presented with labile affect, crying/tearfulness, speech output increased/pressured speech, anxious mood, depressed mood, and sad affect records" (AR 30 (citing AR 357, 371, 373, 376)). The record, then, at most suggests that Messal's symptoms waxed and waned. "[T]he Seventh Circuit Court of Appeals has emphasized, a person who suffers from mental illness will have better days and worse days. . . . [An ALJ] must consider whether the claimant can hold a job even on low days." *Vian v. Comm'r of Soc. Sec*, 15-cv-00040-SLC, 2017 WL 461561, at *10 (N.D. Ind. Feb. 2, 2017) (citation omitted).

Ultimately then, the Court cannot say the ALJ "minimally articulate[d]" her reasons for discounting Dr. Predina's and Dr. Lovko's opinions. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). "Without expressly relying on any medical evidence or authority, the ALJ determined that [Messal's limited social interactions] were incompatible with . . . [Dr. Predina's

and Dr. Lovko's] conclusions regarding [her] functional abilities." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Though the ALJ was free to consider Messal's social activities and testimony, it is not clear why they were inconsistent with Dr. Predina's and Dr. Lovko's opinions regarding social limitations. "Being unable to discern how—apart from substituting [her] own judgment for that of the medical witnesses—the ALJ reached [her] determination regarding the degree of [Messal's] impairments, [the Court] must reverse and remand for further proceedings."[5] *Id.* at 971.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Messal and against the Commissioner.

SO ORDERED.

Entered this 28th day of January 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[5] Because the Court finds that remand is necessary to properly assess Dr. Prenida's and Dr. Lovko's opinions, it does not reach Messal's argument regarding her ability to concentrate for two-hour periods.